MORRIS EICHENBAUM and Others, Plaintiffs, *v.* TAXICAB INDEPENDENT OWNERS AUTO MUTUAL CASUALTY COMPANY, INC., and Others, Defendants.

City Court of New York, Bronx County, March 10, 1930.

*Sidney M. Wittner*, for the plaintiffs.

*James J. Dooling*, for the defendants.

EVANS, J. Plaintiffs ask that the judgment dismissing their complaint on the merits (*Eichenbaum* v. *Independent Owners Auto Mutual Casualty Co.*, 135 Misc. 339) be set aside, and instead that a verdict be directed for them, upon the ground that the court erred in its application of the law to the case.

The law as to brokers' commissions, plaintiffs contend, is radically different, when applied to a mortgage loan, from that to be applied to the sale of real property. In the latter instance the broker has earned his commissions when he has found a purchaser ready, willing and able to buy on the terms set by the seller. But in the former instance it is contended that a broker has not earned his commissions when he has procured a lender, ready, willing and able to make the loan on the terms set by the borrower, but he must go further, it is contended, and await the actual delivery of the money loaned before he earns his commission. The difference is not in the principles of law, but in the nature of the contract. The question turns on the purpose for which the broker is employed. If he is employed *to procure* a loan, then his employer is not liable for commissions until the loan has actually been procured and the loan money delivered. A contract to borrow and lend, fully embodying all the terms desired by the parties, even though reduced to the formality of a writing, between borrower and lender, will not be sufficient to entitle the broker to commissions under those circumstances. (*Crasto* v. *White*, 52 Hun, 473; *Ashfield* v. *Case*, 93 App. Div. 452; *Duckworth* v. *Rogers*, 109 id. 168.) There are circumstances where the broker may fully earn his commission, without the delivery of the loan money, even though his contract is to procure the loan. (*Gatling* v. *Central Spar Verein*, 67 App. Div. 50.)

But where the employment of the broker is not *to procure* the loan, but merely to find a lender, ready, willing and able to lend the money on the terms set by the borrower, then the broker has earned his commission when he has done just that. At bar, the plaintiffs were authorized by their principal, not *to procure* a loan, but *to negotiate* a loan. Their commissions were payable, not *when the loan money was delivered*, or conditionally upon the loan money being delivered, but *on the day of closing*. The final day of closing was fixed. That day they were entitled to their commissions, from their principal, the Appleton Construction Co., Inc.

The contract between plaintiffs and their principal is in writing:

" NEW YORK CITY,
" *May* 26, 1927.

" EICHENBAUM, GREENHAUT & GARTNER,
" 790 Allerton Avenue,
" New York City.

" GENTLEMEN.— We hereby authorize you to negotiate for us a loan for a total of \$32,000.00 on our property size 50' 0" x 100' 0" located at the south east corner of Roberts and Appleton Aves., in the Borough of Bronx, City of New York.

" The terms shall be five years, 3 yrs. standing, and 2 years amortized, 1% every six months, rate of interest 6% per annum payable semi-annually. We guarantee to pay as brokers a fee equivalent to 6% of the face value of the mortgage. This amount to be payable on the day of closing by certified check.

" This fee is by agreement and in consideration of difficulty in placing this loan.

" Yours very truly,
" APPLETON CONST. CO., INC.
" MAX SPITZBERG, *Pres.*"

No ambiguity was claimed as to the meaning of the language. Its fair intendment is that when the broker had successfully concluded " negotiations " for the loan he was to be paid his commissions " on the day of closing." There is even no condition attached that, if there be no closing, there is to be no commission paid. The day for payment is definitely fixed as " the day of closing." If it had been intended by the contract that no commissions would be paid unless the loan money was actually delivered, other words would have been employed. If the word " procure " had been used instead of the word " negotiate," a different question would be presented. But there is no claim of mistake or ambiguity; and it seems to be assumed by plaintiffs that the court must of its own motion substitute the word " procure " for the word " negotiate " in the contract.

But regardless of the question as to whether plaintiffs, by their contract, can recover commissions from their principal, they can recover against defendant only on the theory that they have been damaged by its failure to deliver the loan money after agreeing so to do. They would be damaged, only, if the failure of the defendant to deliver the loan money resulted in a loss of commissions, because of their inability to recover against their principal under their written contract, as a matter of law, and because they could not procure some one else to make the same loan, on the same terms, to their principal. On the evidence in the record it cannot be said, as a matter of law, that plaintiffs cannot recover against their own principal. And there is no evidence in the record that plaintiffs attempted to procure another loan from another lender, and were unable to do so. For all we know they may have procured the loan from another lender on the same terms and may have earned and received commission therefor.

The motion for a reargument is granted, but the original disposition dismissing the complaint stands. Defendant may have ten dollars costs of this motion.